Julie R. BLITZ, Plaintiff-Appellant,

v.

Janet M. BOOG, Defendant-Appellee.

Julie R. BLITZ, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

Nos. 226, 227, Dockets 28421, 28422.

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1964.

Decided Feb. 26, 1964.

Mrs. Julie R. Blitz, plaintiff-appellant, pro se.

Anthony J. D'Auria, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, on the brief; Philip H. Schaeffer, Asst. U. S. Atty., of counsel), for defendants-appellees.

Before MOORE, KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

Julie R. Blitz, plaintiff in these two suits, appeals from judgments of dismissal under Rule 12(b) (6) in both. The

**598**

orders were entered simultaneously on June 15, 1963. The government moved to consolidate the actions below, but the motion was rendered moot by virtue of the court's decision. Since the cases were argued together, we dispose of them in one opinion.

In No. 227, plaintiff sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. District Court jurisdiction was founded on 28 U.S.C. § 1346(b). According to her complaint, whose allegations we accept as true on this appeal, on March 16, 1960 she went to the 24th Street Veterans Administration Hospital in New York City for "out-patient emergency treatment for an emotional upset relating back to certain events of World War II." There she identified herself as a veteran but defendant's employees "refused to accept her identity." However, she received an injection and attempted to leave the premises but was prevented from leaving by the "wanton and wilful negligence of defendants' employees." Thereafter she was physically overpowered by four men, employees of Bellevue Hospital and removed there. The action of these men were supervised by Janet M. Boog, an employee of the defendant. She was kept at Bellevue for eight days, suffering beating and indignities and receiving improper treatment. The last six paragraphs of the complaint relate that on October 3, 1960, she entered the Bronx Veterans' Administration Hospital for the treatment of a "fever of undetermined origin," that she was not treated for the fever but received psychiatric treatment against her will.

On April 2, 1963, the government moved to dismiss the complaint, furnishing affidavits of an Assistant United States Attorney and of Dr. Boog, who had treated plaintiff at 24th Street. They set forth in detail Dr. Boog's status as a resident in psychiatry for the Veterans'

Administration, her recollection as to what happened when plaintiff appeared for treatment in a highly upset state, her determination that bed care was necessary, and a recital of the procedure whereby, in the absence of facilities at V. A. hospital, patients are transferred to other hospitals pursuant to 38 C.F.R. § 17.50.

In No. 226, plaintiff had brought an action in the New York State Supreme Court against Dr. Boog. Her complaint, served on April 24, 1962, alleged false imprisonment in general terms. Defendant removed the action to the district court, pursuant to 28 U.S.C. § 1442, on the ground that at the time of the acts complained of she was acting within the scope of her employment as a government employee. In April 1963, the government, which assumed her defense, moved for dismissal of the complaint. Its motions were granted in both actions, as noted above.[1]

### I. *Federal Tort Claims Action*

█ In this action the government contends that the complaint is barred under the exceptions to liability in tort set out in 28 U.S.C. § 2680, particularly subdivisions (a) and (h). In waiving sovereign immunity under certain circumstances, Congress made certain that the United States would not be subject to liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused," or for those "arising out of assault, battery, false imprisonment, false arrest" and other intentional torts.

█ While the allegations in this complaint concerning the visit to the Veterans Hospital in New York City charge wanton and wilful "negligence" over and over again, the actual facts pleaded make

---

1. Since matters outside the pleadings were presented and not excluded by the court, the motions should have been treated as for summary judgment under Rule 56, F.R.Civ.P. See F.R.Civ.P. 12(b).

We will treat the appeal as if this was done. As plaintiff submitted opposing affidavits, she suffered no prejudice by this procedure.

out a claim for false imprisonment. It is, of course, the substance of the claim, and not the language used in stating it, that controls. Klein v. United States, 268 F.2d 63 (2 Cir. 1959); Miller Harness Co. v. United States, 241 F.2d 781 (2 Cir. 1957). Here the basis of the claim is the intentional detention of the plaintiff and the refusal to permit her to leave the Veterans Hospital before the agents from Bellevue arrived. False imprisonment means wrongful or unlawful detention. Schultz v. Greenwood Cemetery, 190 N.Y. 276, 83 N.E. 41 (1907); Guzy v. Guzy, 16 Misc.2d 975, 184 N.Y.S. 2d 161 (1959), aff'd, 11 A.D.2d 1047, 206 N.Y.S.2d 355 (1960); 1 Restatement of Torts § 35. Thus, this claim is barred by 28 U.S.C. § 2680(h). Klein v. United States, 268 F.2d 63 (2 Cir. 1959). In our view of this portion of the complaint we do not have to pass upon the government's claim that the action is barred because the acts complained of were within the "discretionary function" provision of 28 U.S.C.A. § 2680(a). Cf. Morton v. United States, 97 U.S.App. D.C. 84, 228 F.2d 431 (1955), cert. denied, 350 U.S. 975, 76 S.Ct. 452, 100 L.Ed. 845 (1956).

 Appellant also charges mistreatment at the hands of employees of Bellevue Hospital, who were, of course, not federal personnel, while she was held there. Under ordinary principles of tort law, liability can be imposed for the acts of a third person in these circumstances only if the negligence is the "proximate cause" of the injury or, better put, only where such acts are among the foreseeable consequences of defendant's conduct. 2 Harper & James, Torts, § 18.2 (1956). This principle is obviously applicable to suits under the Federal Tort Claims Act. United States v. Hutchins, 268 F.2d 69, 83 A.L.R.2d 447 (6 Cir. 1959); Voytas v. United States, 256 F.2d 786 (7 Cir. 1958). In the absence of an allegation that agents of the United States knew or should have known that injuries were likely to be inflicted on plaintiff while she was at Bellevue, the complaint in this regard is insufficient.

 The third portion of the complaint alleges failure of officers and employees of the Veterans Hospital of the Bronx to treat plaintiff for "recurrent fevers" and "fever of undetermined origin." Instead, it is alleged, employees of the hospital "applied other psychological pressures to plaintiff." The question here is whether this decision of the Veterans Hospital officials to examine for psychiatric symptoms rather than fever symptoms was a decision that involved the "discretionary function" exception of section 2680(a).

We are convinced that each case in this area must stand on its own record. Recently we held:

"There is no litmus paper test to distinguish acts of discretion, compare Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, with Hatahley v. United States, 1956, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065; see 2 Harper & James, Torts, § 29.14 at 1658 (1956), and to require a finding of 'discretion' would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?" Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655, 659 (2 Cir.), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963).

On her visit to the Veterans Hospital in New York, plaintiff had sought treatment for "an emotional upset relating back to certain events of World War II." On her visit to the Bronx Hospital she sought treatment for recurrent fevers and for the purpose of locating a "fever of undetermined origin."

It requires little medical knowledge to realize that such ailments may sometimes have a psychosomatic origin, and that this possibility warrants investigation. We believe that the medical decision to

give a patient a psychiatric examination in these circumstances, which is apparently all that appellant complains of, falls under the "discretionary function" exception of section 2680(a).

## II. *The Removed State Court Action*

In No. 226, the first question presented is the removability of the suit. Under our rulings in Poss v. Lieberman, 299 F.2d 358 (2 Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962); and Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655 (2 Cir.), cert. denied, 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963), removal was proper under 28 U.S.C. § 1442(a) (1), even though the grounds were not apparent on the face of the complaint.

On the merits, we affirm the judgment of the district court that Dr. Boog enjoyed immunity from suit for false imprisonment by virtue of the fact that her decision to transfer appellant to Bellevue Hospital was made in pursuance of her official duties in what reasonably appeared to her to be an emergency situation. Her actions fall clearly within the language of Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2 Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950):

"Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books."

The rationale of Gregoire is by no means limited to high-ranking officers. See Ove Gustavsson Contracting Co. v. Floete, supra. Indeed, in Taylor v. Glotfelty, 201 F.2d 51 (6 Cir. 1952), the court held that a government psychiatrist who had made a report stating that plaintiff was insane could not be sued for libel. In our view, it is at least as important for a government psychiatrist to be able to arrange for care of a patient without fear of liability for false imprisonment as it is for him to be able to make diagnoses without fear of liability for libel. The judgments are, therefore, affirmed.