**Melissa JOHNSON, an infant by Barbara JOHNSON, her mother and natural guardian and Barbara Johnson, individually, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 939, Docket 84–6335.**

United States Court of Appeals, Second Circuit.

Argued April 8, 1985.

Decided April 8, 1986.

---

Kathleen Peratis, New York City (Richard Frank, P.C., New York City, of counsel), for plaintiffs-appellants.

Kevin P. Simmons, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MANSFIELD, KEARSE and PRATT, Circuit Judges.

MANSFIELD, Circuit Judge:

Barbara and Melissa Johnson, mother and daughter respectively, appeal from a judgment of the Eastern District of New York, 594 F.Supp. 728, Eugene H. Nickerson, Judge, dismissing their claims against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq*. The Johnsons seek damages stemming from the United States Postal Service's alleged negligence in the employment and supervision of a letter carrier who sexually assaulted the infant Melissa. Judge Nickerson ruled that the court lacked subject matter jurisdiction because the plaintiffs failed to comply with 28 U.S.C. § 2675(a),[1] which requires that claims against the United States be presented to the appropriate agency before an action may be maintained. We hold that the Johnsons' claim met the requirements of the statute and that the district court erred in this respect. However, we conclude that the district court lacked subject matter jurisdiction over the suit because it "aris[es] out of" an assault and battery and is therefore barred by 28 U.S.C. § 2680(h).[2] Accordingly, we affirm.

On October 3, 1983, Barbara Johnson submitted a claim to the Postal Service for injury and damages, utilizing the appropriate one page standard form prepared by the federal government. *See* 28 C.F.R. § 14.2 (1985). In response to question 11, which requires the applicant to "[s]tate below, in detail, all known facts and circumstances attending the damage, injury, or death, identifying persons and property involved and the cause thereof" she stated that on June 3, 1982 "and various dates prior thereto"

"Melissa Johnson was sexually molested assaulted and, on information and belief, sodomized and threatened by Postman Luis Ojeda.

"Barbara Johnson sustained damage for medical and psychological treatment and loss of services."

---

1. 28 U.S.C. § 2675(a) provides in pertinent part:
   "§ 2675. Disposition by federal agency as prerequisite; evidence
   "(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

2. 28 U.S.C. § 2680 provides in part:
   "§ 2680. Exceptions
   "The provisions of this chapter and section 1346(b) of this title shall not apply to—
       \*    \*    \*    \*    \*    \*
   "(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: ...."

The claim further stated that Melissa Johnson suffered "vaginal and genital injuries, psychiatric and emotional injuries [of which the] full nature and extent [are] unknown at present." It stated that Barbara Johnson incurred "expenses for medical and psychological treatment" and suffered "loss of services". The Johnson's sought $6,000,000.

By letter dated January 6, 1984, the Postal Service denied the claim. First, the agency maintained that Ojeda acted outside the scope of his employment in assaulting Melissa Johnson. Second, the letter stated:

"The incident you describe as the basis of your claim is an assault and battery. While Congress has generally waived the Government's immunity for certain wrongful acts of its employees commited [sic] within the scope of their employment, Congress has specifically provided, in *28 U.S.C. § 2680(h)*, that the Government's immunity from suit and from considering claims for personal injury has not been waived for any claim arising out of an assault and battery." (Emphasis in original).

On April 4, 1984, plaintiffs filed the complaint in this action, alleging that the sexual assault on Melissa was "caused by the carelessness, recklessness and negligence of the defendant, its agents, servants and/or employees" in their "employment, supervision and assignment of Ojeda". Although plaintiffs alleged generally that the defendant and its agents acted "with notice or knowledge of Ojeda's criminal and perverted propensities and tendencies" no facts supporting these assertions or further specification were provided in the complaint.

Defendant moved to dismiss the complaint for lack of subject matter jurisdiction, contending that the United States had not waived its sovereign immunity in this case because it was one "arising out of" assault or battery. 28 U.S.C. § 2680(h) provides a number of exceptions to the broad waiver of sovereign immunity embodied in the FTCA, including a bar on suits "arising out of assault [and] battery."

Judge Nickerson granted the motion but did not address the grounds proffered by defendant. Instead, the district court ruled that the claim raised by the complaint had not been submitted to the Postal Service as required by 28 U.S.C. § 2675(a). The court noted that, although the complaint alleged negligent supervision, the administrative claim made no mention of such a legal theory or of facts suggesting that "anyone other than Ojeda might be culpable for the[ ] injuries".

## DISCUSSION

### Sufficiency of the Administrative Claim

■ Appellants contend that the administrative claim filed with the Postal Service, alleging only sexual assault and injuries stemming from it, was sufficient to enable them to maintain a court action against the United States for negligent supervision. 28 U.S.C. § 2675(a) makes the filing of a claim with the appropriate agency a prerequisite to jurisdiction of the courts. As we have stated

"Section 2675 is designed, in conjunction with Section 2672, to provide a procedure under which the government may investigate, evaluate and consider settlement of a claim. This purpose requires that the Notice of Claim provide sufficient information both to permit an investigation and to estimate the claim's worth." *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir.1983), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1984); *see Shipek v. United States*, 752 F.2d 1352, 1354 (9th Cir.1985); *Bush v. United States*, 703 F.2d 491, 493–94 (11th Cir.1983); *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir.1981); *Adams v. United States*, 615 F.2d 284, 289 (5th Cir.), *clarified*, 622 F.2d 197 (1980).

Thus, an administrative claim need not meet formal pleading requirements. All that is necessary is that a claim be specific enough to serve the purposes intended by Congress in enacting § 2675(a)—"to ease court congestion and avoid unnecessary liti-

gation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S.Rep. No. 1327, 89th Congress, 2d Sess. 2 (1966), reprinted in 1966 U.S. Code Cong. & Ad.News ("USCCAN") 2515, 2516. Toward this end, the government requires all claimants to submit Standard Form 95, a one page claim form requesting a "description of accident" and the "nature and extent of injury".

■ Appellants' administrative claim met these requirements. By stating the cause of the injury, the name of the employee who committed the assault, and the date and location of the attack, the claim notified the agency of sufficient factual circumstances to enable it to investigate the matter. Although the claim supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability, a reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession relating to the agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee Ojeda. *See Rise v. United States,* 630 F.2d 1068 (5th Cir.1980) (administrative claim alleging negligent failure to diagnose and treat illness sufficient to maintain action for negligent referral to private hospital and failure to supervise treatment).

A more difficult issue is presented by Judge Nickerson's conclusion that the claim was inadequate because, as submitted, it alleged only assault, a tort clearly barred by § 2680(h), and therefore the agency could have reasonably refrained from investigating the claim at all. Although this position might have some logic if the claimant were to be held strictly to principles of common law pleading we believe that a more liberal standard was intended. In enacting § 2675(a) Congress was aware that the Postal Service was one of the few agencies that dealt with the vast bulk of claims against the federal government and had acquired familiarity with the task of settling tort claims, S.Rep. 1327, *supra,* at 3, USCCAN *supra,* at 2517. Giv-

en this familiarity, and the well settled principle that legal theories need not be submitted to the agency, *Broudy v. United States,* 722 F.2d 566, 568–69 (9th Cir.1983); *Rise, supra,* 630 F.2d at 1071, the agency could reasonably be required to have anticipated that appellants' claims encompassed recovery based on negligent supervision and to conduct an investigation accordingly.

The alleged conduct of the postal employee should normally have prompted an inquiry into the Postal Service's prior knowledge of his propensities since experience indicates that it is the kind of conduct that may be repetitive. Section 2675(a) does not require formal pleadings or that a valid legal claim be alleged but only "the basic elements of notice of accident and injury and a sum certain representing damages" so that the agency may investigate it. *Broudy, supra,* 722 F.2d at 568 (citing *Avery v. United States,* 680 F.2d 608, 610 (9th Cir.1982)). Although these requirements are jurisdictional and must be adhered to strictly, *Keene, supra,* 700 F.2d at 841, the district court erred in extending them to require that a ground of liability cannot be maintained unless factual elements uniquely related to that theory were first presented in the administrative claim.

Our decision of this issue accords with that of other courts which have held that claims stating plainly-barred causes of action may nevertheless be sufficiently described under § 2675(a) to permit claimants to maintain suits on alternative theories of liability. Thus in *Shipek, supra,* and *Broudy, supra,* the Ninth Circuit permitted widows of veterans to maintain suits against the government for failure to warn their husbands, upon discharge from military service, of the dangers of radiation exposure which occurred while the husbands were in the military. In both cases the administrative claim alleged only wrongful exposure to radiation, a claim clearly barred by the *Feres* doctrine. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) (government is immune from suit under the Federal Tort

Claims Act for injuries to servicemen arising out of or in the course of activity relating to service). Nonetheless, the courts declined to require that the administrative claims state alternative theories of liability or facts related solely to such grounds and permitted the plaintiffs to maintain actions against the government.[3]

### The Claim Arises Out of Assault and Battery

■ Although remand to the district court is usually required when its dismissal of a suit is predicated on legal error, that course is unnecessary here because the district court lacked subject matter jurisdiction to proceed with the case. Defendant's motion to dismiss contended that the Johnsons' claims fell within the FTCA's exception retaining immunity as to claims "arising out of assault [or] battery". 28 U.S.C. § 2680(h). The district court did not reach that issue. However, we address it in the first instance because it presents a question of law addressed to the jurisdiction of the district court. We conclude that the claims here "arise out of" assault and battery and are therefore excepted from the FTCA's grant of jurisdiction. 28 U.S.C. § 1346(b).

In *United States v. Shearer*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), Chief Justice Burger, in a portion of an opinion concurred in by three other Justices, concluded that a negligence claim of the very type asserted here arises out of an assault and battery within the meaning of § 2680(h). He noted that

"Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery

committed by a Government employee. Thus 'the express words of the statute' bar respondent's claim against the Government. *United States v. Spelar*, 338 U.S. 217, 219, 70 S.Ct. 10, 11, 94 L.Ed. 3 (1949)." 105 S.Ct. at 3042. (Emphasis in original).

Four other Justices declined to join the portion of the Chief Justice's opinion addressing this issue but did not dissent from it. *Id.* at 3044. The remaining Justice did not participate in the case.

We agree with the Chief Justice that the plain language of § 2680(h) prohibits claimants from clothing assault and battery actions in the garb of negligence by claiming negligent failure to prevent the attack. *Cf. Lambertson v. United States*, 528 F.2d 441, 445 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976); *Blitz v. Boog*, 328 F.2d 596, 598–99 (2d Cir.), *cert. denied*, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964). In interpreting a statute, "[t]he starting point of our analysis is the language of the statute itself", *American Textile Manufacturers Institute, Inc. v. Donovan*, 452 U.S. 490, 508, 101 S.Ct. 2478, 2490, 69 L.Ed.2d 185 (1981), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *American Federation of Labor v. Donovan*, 757 F.2d 330, 344, 350 (D.C.Cir.1985). In this case we find the statutory language sufficiently clear to resolve the issue.

■ The statute's plain language, "arising out of," reflects an intent by Congress to bar a suit against the government for injuries *caused by* a government employee's commission of an assault and battery. It is equally clear that the claim here is for injuries caused by the employee's assault and battery and that, absent the assault

---

3. The claims relating to failure to warn, monitor and treat were not barred by the *Feres* doctrine because they claimed negligence occurring after the decedents had left the military. *Brou-*

*dy v. United States*, 661 F.2d 125, 128 (9th Cir. 1981); *see Kohn v. United States*, 680 F.2d 922, 926 (2d Cir.1982).

and battery, no claim could exist. The scope of § 2680(h) is a matter of federal law. *See United States v. Neustadt*, 366 U.S. 696, 705–06, 81 S.Ct. 1294, 1299–1300, 6 L.Ed.2d 614 (1961). To permit such a claim to be stated in terms of a negligence theory based on prior foreseeability, *see Restatement (Second) of Torts*, § 449 (1965); *W. Prosser, Law of Torts*, § 44 at 273, 275 (4th ed. 1971), would defeat Congress' purpose in enacting § 2680(h). The claim, although stated in terms of negligence, would still be for injuries caused by and arising out of the assault and battery.

Our holding that the phrase "arising out of assault [and] battery" encompasses actions grounded on alternative theories of liability finds support in the Supreme Court's interpretation of the phrase "arising out of" as used in other exceptions of the FTCA. In *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), the Court interpreted § 2680(c), which bars "any claim arising in respect of ... any detention of any goods or merchandise" as prohibiting all claims for injuries sustained during detention, including those alleging negligence. In reaching this conclusion the Court rejected the view that "arising in respect of detention" only covers claims for damage caused by the detention itself. Instead, the Court concluded that "arising in respect of" is equivalent to "arising out of" and therefore should be construed as barring all claims relating to the detention of goods. *Id.* at 854, 104 S.Ct. at 1524. Similarly, we conclude that "arising out of assault [and] battery" bars claims where the injuries result directly from the assault and battery.

In *Panella v. United States*, 216 F.2d 622, 624 (2d Cir.1954), Judge (later Justice) Harlan expressed the view that § 2680(h) bars suit when the injuries result from an assault committed by a government employee, even if the action is based on alternative legal theories. In holding that § 2680(h) does not bar suit for negligence leading to an assault by a *non-government employee*, he distinguished suits, like this one, based on assaults committed by *government employees*:

"It is ... important to distinguish cases in which it was sought to hold the Government liable on a negligence theory for assaults committed by *government employees*. See *Moos v. United States*, D.C.Minn.1954, 118 F.Supp. 275; cf. *Jones v. United States*, 2 Cir., 1953, 207 F.2d 563; certiorari denied 347 U.S. 921, 74 S.Ct. 518 [98 L.Ed. 1075]. In this case, however, a negligence action is not merely an alternative form of remedy to an action for assault but negligence is rather the essence of the plaintiff's claim.

"To illustrate: in one case a person is assaulted by a government employee who becomes angered by a discussion about a matter within his jurisdiction; in another, a visitor to a government prison is assaulted by a prisoner as a result of the prison guards being improperly off duty. Since in the absence of § 2680(h) the assault in the first case might give rise to an action against the Government without any showing of negligence, it is not difficult to imply that the § 2680(h) exception was intended to exonerate the Government from all liability of this nature, no matter what the form of the action. But that implication is not so easily reached in the second case where the assault, absent negligence, would not give rise to any liability on the part of the Government." 216 F.2d at 624 (Emphasis in original); *see Muniz v. United States*, 305 F.2d 285, 287 (2d Cir.1962), *aff'd on other grounds*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

Other courts have also rejected attempts to circumvent the assault and battery exception by framing the complaint as one for negligent supervision. Most recently, the Fifth Circuit in *Garcia v. United States*, 776 F.2d 116, 118 (5th Cir.1985), cited the Chief Justice's opinion in *Shearer, supra*, and concluded that claims alleging negligent failure to prevent an assault by a government employee are barred by § 2680(h). The 10th Circuit in *Naisbitt v. United States*, 611 F.2d 1350, 1353–54 (10th Cir.), *cert. denied*, 449 U.S. 885, 101

S.Ct. 240, 66 L.Ed.2d 111 (1980), relied on *Panella, supra,* in barring a suit for negligent supervision. The court looked to the immediate cause of the injury rather than the theory of liability and stated that "[i]n any case in which the employee has intentionally injured another, the tort asserted against the government, regardless of whether it is called negligence, is indeed an intentional tort attributable to the government." *Id.* at 1356; *see Wine v. United States,* 705 F.2d 366 (10th Cir.1983).

In *Hughes v. Sullivan,* 514 F.Supp. 667 (E.D.Va.1980), *aff'd,* 662 F.2d 219 (4th Cir. 1981), the court dealt with facts similar to those alleged here and held that § 2680(h) prohibited suit against the U.S. Postal Service for negligent supervision of a letter carrier who allegedly committed sexual assaults on two children. Although the plaintiff alleged that the service had knowledge of previous misconduct of the assailant, the court stated "there would have been no assault except for the separate and independent acts of [the assailant]. Without his independent assault, there would be no cause of action." 514 F.Supp. at 670. Thus the court applied a "but for" test to determine that the suit arose out of assault and battery and recognized that even though the plaintiff may have had a cause of action under state law against the employer for negligence, the suit was barred by the statute.[4] The Fourth Circuit affirmed "for reasons adequately stated by the district court." 662 F.2d at 220.

Courts interpreting other exceptions to the FTCA provided by § 2680 have, like the Supreme Court in *Kosak, supra,* adopted the view that its "arising out of" language bars suits where the prohibited claims could, in absence of the exception, have been prosecuted. *Formula One Motors, Ltd. v. United States,* 777 F.2d 822 (2d Cir.1985) (affirming dismissal of claim for destruction of goods detained). In *Klein v. United States,* 268 F.2d 63, 64 (2d Cir. 1959), a claim for negligent exposure to the elements was held barred by § 2680(h) as "arising out of ... false arrest" because "the alleged consequences to plaintiff directly flowed from the detention." In *Davidson v. Kane,* 337 F.Supp. 922 (E.D. Va.1972), the court held that the false arrest provision prevented the plaintiff from maintaining a suit claiming that the arresting officers were negligently supervised. These cases demonstrate that although § 2680(h) deals primarily with intentional torts and the general policy of the FTCA is to permit negligence suits, the provision nonetheless has been interpreted to except claims based on negligence leading to intentional torts. *Cf. United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (action for negligent misrepresentation barred by § 2680(h)); *Dupree v. United States,* 264 F.2d 140 (3d Cir.), *cert. denied,* 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959) (action for negligent interference with contractual rights barred by § 2680(h)).

The meager legislative history available is consistent with the interpretation that § 2680(h) cannot be avoided merely by alleging that an assault and battery was due to negligent supervision.[5] *See Shear-*

---

**4.** The same reasoning was adopted by the court in *Collins v. United States,* 259 F.Supp. 363, 364 (E.D.Pa.1966). The court held that § 2680(h) blocked an action against the government for negligence in hiring and retaining a postman who allegedly "pushed, hit and struck" the plaintiff. Other courts have taken the same approach. *See, e.g., Gale v. United States,* 525 F.Supp. 260 (D.S.C.1981) (dismissing suit for negligent supervision of marine who raped plaintiff); *Taylor v. United States,* 513 F.Supp. 647 (D.S.C.1981) (dismissal of suit for negligent failure to provide psychological treatment leading to commission of murder); *Pennington v. United States,* 406 F.Supp. 850 (E.D.N.Y.1976) (dismissing suit claiming negligence in allowing

government employee to carry a gun, even though assault was committed while the assailant was off-duty); *cf. Moffitt v. United States,* 430 F.Supp. 34 (E.D.Tenn.1976) (permitting suit to proceed where plaintiff alleged that employee was incapable of forming the intent to commit assault and battery).

**5.** The legislative history mostly consists of statements by individual congressmen or administration officials on bills which were similar to the FTCA, but were not enacted. Discussion rarely touched upon the assault and battery exception. *See Panella, supra,* 216 F.2d at 625–26 (describing the legislative history as "meagre"); *Collins, supra,* 259 F.Supp. at 364 (legislative history is

*er, supra,* —— U.S. ——, 105 S.Ct. at 3042. No report or congressional statement suggests otherwise. One representative of the Justice Department referred to assault and battery as "torts which would be difficult to make a defense against, and which are easily exaggerated." Tort Claims Against the United States: Hearings on S. 2690 Before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 3d Sess. 39 (1940) (Statement of Alexander Holtzoff, Special Assistant to the Attorney General). This reference corresponds to one of the "three objectives most often mentioned in the legislative history as rationales for the enumerated exceptions [to the FTCA:] ... avoiding exposure of the United States to liability for excessive or fraudulent claims", *Kosak, supra,* 465 U.S. at 858–59 & n. 17, 104 S.Ct. at 1525–26 n. 17.[6] This concern is warranted where neg-

ligent supervision is alleged as well as where assault and battery stand alone. Assaults due to negligence are as easy to exaggerate as assaults in general.[7]

■■■ Our interpretation of § 2680(h) has not been universally shared. In *Shearer v. United States,* 723 F.2d 1102, 1106–08 (3d Cir.1983), *rev'd on other grounds,* —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), *supra,* a divided panel of the Third Circuit reinstated a claim that negligent supervision led to the murder of plaintiff's son by a soldier. The Court held that § 2680(h) does not bar actions where the plaintiff alleges sufficient facts "which, if proven, would demonstrate that the government should have reasonably anticipated that one of their employees would commit an intentional tort." 723 F.2d at 1107.[8] Although we and at least four Su-

---

not "at all helpful"). In any event, statements of individual legislators are not accorded the weight given to legislative committee reports, none of which discuss the matter at issue here. *United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers of America,* 352 U.S. 567, 585–86, 77 S.Ct. 529, 538, 1 L.Ed.2d 563 (1957); *Banco Nacional de Cuba v. Farr,* 383 F.2d 166, 175 (2d Cir.1967), *cert. denied,* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968); *American Airline, Inc. v. C.A.B.,* 365 U.S. 939, 949 (D.C.Cir.1966).

**6.** The other concerns are "ensuring that 'certain governmental activities' not be disrupted by the threat of damage suits" and "not extending the coverage of the Act to suits for which adequate remedies were already available." *Kosak, supra,* 465 U.S. at 858–59, 104 S.Ct. at 1525–26. The Senate Report accompanying the bill ultimately signed into law only refers to those two rationales. S.Rep. No. 1400, 79th Cong. 2d Sess. 33 (1946).

**7.** A colloquy on the assault and battery exception at a hearing of the House Judiciary Committee is singularly unenlightening. The Justice Department spokesman told the panel that the exception would bar suits remedying "deliberate assault", but not those based on "negligent assaults". *See* Tort Claims: Hearings on H.R. 5373 and H.R. 6463 Before the House Committee on the Judiciary, 77th Cong., 2d Sess. 33–34 (1942). The spokesman concluded that "[a]n injury caused by negligence could be considered under the bill" *Id.* Yet in his references to negligence, it was clear that the spokesman was referring to automobile accidents, and did not contemplate situations that interweave negligent and intentional torts.

**8.** The Third Circuit majority in *Shearer* relied on *Gibson v. United States,* 457 F.2d 1391 (3d Cir.1972), in which the court permitted suit by a plaintiff assaulted by a Job Corps trainee. It is debatable whether the assailant in *Gibson* can be considered a government employee. In any event, the *Gibson* court distinguished *Collins, supra,* by noting that the government had undertaken a duty of caring for and controlling the trainees, knowing of their drug addictions and instability. 457 F.2d at 1396. No such extensive duty is alleged to have been undertaken in the employment of the postal worker at issue in this case.

Several other courts have adopted the approach taken by the Third Circuit in *Shearer. Liuzzo v. United States,* 508 F.Supp. 923 (E.D. Mich.1981); *Bryson v. United States,* 463 F.Supp. 908, 912 (E.D.Pa.1978).

A number of courts have declined to apply § 2680(h) in contexts which appear similar to the facts of this case, but differ in significant respects. *Rogers v. United States,* 397 F.2d 12 (4th Cir.1968) (permitting claim that alleged negligence led to assault by non-government employee); *DeLong v. United States,* 600 F.Supp. 331, 338 (D.Alaska 1984) (distinguishing suits based on general failures to supervise employees and permitting suit based on negligent failure to perform specific acts). In *Loritts v. United States,* 489 F.Supp. 1030 (D.Mass.1980), the court permitted suit for negligent failure to provide security on West Point campus leading to the rape of the plaintiff by a cadet. The negligence alleged, however, was independent of the government's supervision of its employees and the fact that an employee, rather than a non-employee, committed the assault was "fortuitous".

preme Court Justices disagree with the holding of the Third Circuit in *Shearer*, appellants' complaint is insufficient to survive even the test propounded by the circuit court. The Third Circuit there noted that "a plaintiff cannot merely point to an assault and battery and then claim, based simply on the occurrence of the intentional tort, that the government was negligent for not having ... anticipated the offensive action.... The plaintiff must allege sufficient independent facts to demonstrate that the government knew or should have known that the employee was dangerous prior to the injurious act." *Id.* (citing *Gibson v. United States*, 457 F.2d 1391, 1395–96 (3d Cir.1972)). This requirement stems from the jurisdictional nature of § 2680(h). Because § 2680(h) is a bar to jurisdiction, facts which are claimed to circumvent application of the provision must be pleaded at the outset of the case. Therefore, even though a pleading may, in other contexts, be sufficient to prevent dismissal under Fed.R.Civ.P. 12(b)(6), a complaint brought under the FTCA must allege facts enabling the court to look beneath the language in the complaint to determine the substance of the claim. *See Emch v. United States*, 630 F.2d 523, 528 (7th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981); *Gaudet v. United States*, 517 F.2d 1034 (5th Cir.1975); *Coffey v. United States*, 387 F.Supp. 539, 540 (D.Conn.1975) (quoting *Nichols v. United States*, 236 F.Supp. 260, 263 (N.D.Miss. 1964)).

▪ The plaintiffs here only offered a conclusory allegation that "the defendant, its agents, servants and employees assigned Ojeda to the area ... with notice or knowledge of Ojeda's criminal and perverted propensities and tendencies ..." and provided no factual basis for this conclusion. They did not state facts indicating that Ojeda had committed past offenses or manifested previous aberrant behavior that his employers should have detected. This

case, therefore, is "the classic case of an intentional assault and battery except for the conclusory allegation the Government knew or should have known that the postal clerk had 'malicious propensities'", *Gibson, supra,* 457 F.2d at 1396, and falls clearly within the ambit of § 2680(h). We are forced to conclude that the plaintiffs have not alleged facts supporting the conclusion that their negligence claim represents a "belief formed after reasonable inquiry [that] it is well grounded in fact" as required by Fed.R.Civ.P. 11. The allegation of negligence therefore appears to be based on pure speculation. Otherwise the essential facts would have been alleged. Courts have not countenanced such attempts to transform assault and battery claims into negligence actions. *See Lambertson, supra,* 528 F.2d at 444; *Gaudet, supra,* 517 F.2d at 1035; *Blitz, supra,* 328 F.2d at 599.

Lastly, appellants maintain that § 2680(h) does not apply because they hope to prove that the assailant, Ojeda, was unable to form the intent necessary to commit the tort of assault and battery. *See Moffitt v. United States*, 430 F.Supp. 34, 37–38 (E.D.Tenn.1976); *Albicocco v. Nicoletto*, 11 A.D.2d 690, 204 N.Y.S.2d 566 (1960), *aff'd*, 9 N.Y.2d 920, 217 N.Y.S.2d 91, 176 N.E.2d 100 (1961). This claim, which borders on the frivolous, must be rejected. Not only did the appellants fail to provide facts supporting the contention that the sexual attack was not an assault, but the complaint did not even contain conclusory allegations raising this issue. This contention therefore does not alter our conclusion that the essence of the claim arises out of assault and battery.

Although appellants argue that we should follow "sound policy considerations" urged in support of permitting the suit, this contention is properly addressed to Congress, not to this court. *See Kosak, supra,* 465 U.S. at 862, 104 S.Ct. at 1528. We accordingly affirm for lack of subject

---

489 F.Supp. at 1032 n. 3. The situation therefore did not involve solely allegations of negligent supervision where the scope of the negligence only encompasses assault by a government employee.

matter jurisdiction the judgment of the district court dismissing the complaint.

GEORGE C. PRATT, Circuit Judge, dissenting:

I dissent and would hold the government liable for the negligence of its employees alleged in this case. The majority has barred this claim by six year old Melissa Johnson, who was sexually molested in her own neighborhood by a postal worker on his rounds, as one "arising out of an assault and battery". 28 U.S.C. § 2680(h). In doing so, the opinion neglects the facts, deemed to be true here, that it was a government employee who assigned the postal worker, Ojeda, as a letter carrier in Melissa's residential neighborhood with knowledge of his perverted propensities and tendencies, that Ojeda "on various occasions * * * sexually molested and sodomized" Melissa, and that Ojeda's superiors were negligent in hiring, assigning, and supervising him.

In general terms, the Federal Tort Claims Act ("FTCA") waived the government's historic sovereign immunity and provided that the United States shall be liable for the negligent acts of any of its employees "in the same manner and to the same extent as a private individual under like circumstances". 28 U.S.C. § 2672, 2674. The Supreme Court has repeatedly rejected a policy of strict construction for this act and has held that it should be construed generously so as to accomplish congress's purpose and policy in waiving an archaic immunity, giving due regard, of course, to the statutory exceptions to that policy. *United States v. Aetna Surety Co.*, 338 U.S. 366, 383, 70 S.Ct. 207, 216, 94 L.Ed. 171 (1949); *Rayonier, Inc. v. United States*, 352 U.S. 315, 320 & n. 3, 77 S.Ct. 374, 377 & n. 3, 1 L.Ed.2d 354 (1957); *United States v. Yellow Cab Co.*, 340 U.S. 543, 554, 71 S.Ct. 399, 406, 95 L.Ed. 523 (1951).

Specifically at issue here is whether the exception in section 2680(h) of claims arising out of assault and battery should bar a claim based on the "negligence", not of the assaulter, as in *Lambertson v. United States*, 528 F.2d 441 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976); *Blitz v. Boog*, 328 F.2d 596 (2d Cir.), *cert. denied*, 379 U.S. 855, 85 S.Ct. 106, 13 L.Ed.2d 58 (1964); and *Gaudet v. United States*, 517 F.2d 1034 (5th Cir.1975), all relied upon in the majority opinion, but of another government employee who was responsible for hiring, assigning, and supervising the assaulter.

Prior to this case the issue was open in this circuit. *Panella v. United States*, 216 F.2d 622 (2d Cir.1954), established that § 2680(h) did not retain governmental immunity against a claim for injuries arising from an assault and battery by one inmate of a government hospital against another, since the government had negligently failed to perform its duty of supervision. The majority here, as have some other courts, *e.g., Collins v. United States*, 259 F.Supp. 363, 364 (E.D.Pa.1966), interpret Judge (later Justice) Harlan's example postulated in *Panella*, 216 F.2d at 624, as authority for barring any suit involving an assault by a government employee. But Judge Harlan's view does not seem to have been so restrictive. What was fatally missing, in his view, from his hypothecated claim based on an assault committed by a government employee, was conduct whose essence was negligence. But his example did not consider the possibility of negligent supervision, and nothing in his analysis requires the extension of § 2680(h) to encompass negligent supervisory conduct.

The scope of section 2680(h)'s exemption also remains an open issue in the Supreme Court. While the problem was squarely presented last term in *Shearer v. United States*, —— U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the expansive reading of the § 2680(h) exemption strongly urged by Chief Justice Burger, and now adopted by the majority in this court, could not entice the support of a majority of the Supreme Court, and the case was disposed of on other grounds.

In my view, a proper interpretation of the FTCA, consistent with its broad and remedial purpose, would be to hold the

government liable, as would be a private person, when its supervisors negligently hire an assaultive employee, assign him to an area of temptation, and negligently fail to foresee and prevent the harm he is likely to inflict on the public. In practical terms, liability in such a situation would create no problems that are distinguishable from many other claims for which the government routinely is held liable. Claims for negligent supervision are no more prone to exaggeration and no more difficult to defend than most automobile accidents; the absence of a jury leaves the case under the firm control of a federal district judge; and punitive damages are not available, 28 U.S.C. § 2674. In short, on this issue I agree with the majority opinion of the third circuit in *Shearer v. United States*, 723 F.2d 1102, 1107–08 (3rd Cir.1983), that the intentional tort exclusion of section 2680(h) was not intended to apply to a case of this type.

One other point in the majority opinion requires comment: the pleading burden the majority would impose on a plaintiff may well prove to be insurmountable. Pointing to plaintiffs' allegations that the defendant assigned Ojeda with notice or knowledge of his perverted propensities, the opinion notes that there is no factual basis for this "conclusion". The opinion notes that the complaint does not state facts indicating that Ojeda had "committed past offenses or manifested previous aberrant behavior that his employers should have detected." And the majority are "forced to conclude" that the claim does not meet the requirements of Fed.R.Civ.P. 11, and is based on "pure speculation".

Nowhere does the majority suggest how plaintiff, presuit, could ever obtain such information. One authoritative source, Ojeda's personnel file, is in the government's control, but it usually would be regarded as quasi-confidential and unavailable to an outsider. As a practical matter, therefore, plaintiffs' attorney would probably be unable to obtain the information required by the majority to satisfy Rule 11 without some form of compelled discovery, discovery which would be avail-

able only if the action should survive the inevitable Rule 12 motion by the government. As a result, requiring plaintiff to plead the additional information mentioned in the majority opinion erects a "Catch 22" barrier: no information until litigation, but no litigation without information.

Further, the strict pleading requirement suggested by the majority opinion ignores Rule 9 of the Federal Rules of Civil Procedure. Under Rule 9(b), while averments of fraud or mistake must be stated "with particularity", the rule specifically permits malice, intent, and the state of mind at issue here—knowledge—to be "averred generally."

Finally, even the majority acknowledges that the type of conduct charged to Ojeda "may be repetitive", sufficiently so to have "normally prompted an inquiry by the postal service into possible prior incidents." Opinion, page 7. The experience behind that observation readily translates to judicial notice and in my view, at least, when coupled with the fact of repeated assaults and continued assignment of Ojeda to a residential neighborhood, provides a sufficient good-faith basis for this complaint of negligent supervision of this postal worker to satisfy the requirements of Rule 11.