Barbara Johnson LIZZI, individually and as mother and natural guardian of Melissa Johnson, Plaintiffs,

v.

The NATIONAL ASSOCIATION OF LETTER CARRIERS and Jack Leventhal Branch 41, Brooklyn Letter Carriers of the National Association of Letter Carriers, Defendants.

No. CV 89–3840.

United States District Court, E.D. New York.

Jan. 23, 1991.

Cullen & Dykman (Cynthia Boyer Okrent, Gregg D. Weinstock, Ross A. Frommer, of counsel), Brooklyn, N.Y., for plaintiffs.

Cohen, Weiss and Simon (Keith A. Secular, Sophia E. Davis, Judy I. Padow, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff Lizzi, individually and as mother and natural guardian of Melissa Johnson, an infant, brought this action in the New York Supreme Court, Kings County, against the defendants, herein referred to as the Union, alleging that on June 2, 1982 one Luis Ojeda, a mail carrier employed by the United States Postal Service (the Postal Service), sexually molested Melissa Johnson and that the Union is liable in damages.

Plaintiffs had previously sued the Postal Service claiming that it had notice of Ojeda's perverted propensities and was negligent in employing, assigning, and supervising him, thereby causing Melissa's injuries. On motion this court dismissed the complaint. *Johnson by Johnson v. United States,* 594 F.Supp. 728 (E.D.N.Y.1984). The Second Circuit affirmed, 788 F.2d 845 (2d Cir.1985), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986), holding that this court had no jurisdiction.

The present complaint, brought more than seven years after the incident, alleges that prior to June 1982 Ojeda had been arrested for public lewdness and indecent exposure, that the Postal Service proposed

to fire or transfer him to a position where he would not threaten the public, but that the Union prevented this by pursuing a grievance in wanton disregard for the readily foreseeable risk to Melissa Johnson and is thus responsible for her injuries. The Union removed the case to this court and now seeks to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment pursuant to Rule 56.

The premise of plaintiff's claim is that the collective bargaining agreement between the Union and the Postal Service gave the Union "control" over employment decisions of the Postal Service. The premise is faulty.

The undisputed facts are these. In 1980 Ojeda was arrested for public lewdness and indecent exposure. The Postal Service issued an emergency suspension and proposed to remove him from his position. In accordance with the collective bargaining agreement with the Postal Service the Union filed a grievance over both the suspension and the proposed removal and carried the grievance to step three of the four step grievance procedure. On January 20, 1981 the Postal Service settled at step three and returned Ojeda to service as a letter carrier.

Article 16 of the collective bargaining agreement recites that no employee shall be disciplined except for "just cause." Article 15 provides for the grievance procedures. In step one the employee's immediate supervisor renders the decision. A Postal Service's designee decides at step two. Step three consists of an appeal to a regional director of the Postal Service. Again the Postal Service's representative makes the decision. The parties may settle at any of the first three steps.

The Union, if unsuccessful at the first three stages, may appeal to arbitration at the regional level. The arbitrator's decision is final and binding on the parties.

Article 3 of the collective bargaining agreement provides that the Postal Service has the exclusive right, subject to the agreement and applicable law, to direct employees in their duties, and to hire, promote, transfer, assign, suspend, demote, discharge, or take other disciplinary action against them.

The agreement gives the Union none of these rights. It may pursue grievances in good faith for the employees, but cannot control or veto the Postal Service's decisions or force it to settle or the arbitrator to uphold a grievance.

In handling a grievance a union has a duty to represent the employee fairly, *Vaca v. Sipes*, 386 U.S. 171, 194, 87 S.Ct. 903, 918, 17 L.Ed.2d 842 (1967), and may be liable to the employee if it fails to do so. Nothing in law or in reason suggests that it has a duty to the public to refuse to handle a grievance.

It is fatuous to suppose that because the employer sees fit to settle or an arbitrator to sustain a grievance brought by the Union questioning the proposed firing of an employee, the union should be liable for injuries thereafter inflicted by the employee on a member of the public. A union is an advocate, not a judge guarding the interests of putative third persons. It should not be required, at peril of being held liable at the hands either of the employee or of a third party, to conclude that the employee's version of the facts is erroneous or to determine in advance the eventual decision of the employer or the arbitrator.

The court finds no merit in plaintiff's claim. It is unnecessary to consider the other arguments by the Union in support of the motion.

Defendants' motion for summary judgment is granted, and the complaint is dismissed with costs and disbursements. So ordered.