**John W. KENNA and Mary Kenna, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 93–4735.**

United States District Court, E.D. New York.

May 29, 1996.

Easton & Clark by Suzanne Flanagan, Levittown, New York, for plaintiffs.

Zachary W. Carter, United States Attorney by Leslie Brodsky, Assistant U.S. Attorney, Brooklyn, New York, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs John and Mary Kenna, husband and wife, bring this action against defendant United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Before the Court is defendant's motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure seeking dismissal of plaintiffs' amended complaint. For the reasons below, the motion is granted.

## I. BACKGROUND

The facts as alleged in the amended complaint [1] can be summarized briefly as follows. Plaintiff John Kenna ("Kenna") was employed as a security guard by United International Investigative Services ("UIIS") and assigned to the Internal Revenue Service ("IRS") facility located at 1040 Waverly Ave-nue, Holtsville, New York, pursuant to an agreement between UIIS and the IRS, whereby UIIS provided security guards at that location. On February 11, 1992, Kenna was assaulted by an IRS employee, Kerry P. Hasapidis ("Hasapidis"). Plaintiffs do not indicate the position or job held by Hasapidis with the IRS.

According to plaintiffs, the IRS hired persons with known "mental defects/deficiencies" and such persons were "dangerously sick, mentally and morally." Amended Complaint ¶¶ 8, 10. Hasapidis was such a person. *Id.* The IRS knew or should have known that Hasapidis had a violent history requiring the use of medication, that Hasapidis was under the influence of psychotropic medications during his employment, and that his use of such medications required proper monitoring, supervision and/or control. *Id.* ¶¶ 11–14. Plaintiffs further allege that defendant was negligent in "failing to warn those working with [Hasapidis] about his violent propensities," "fail[ing] to control and monitor the medications of [Hasapidis]," and "fail[ing] . . . to exercise due care and caution for the safety of its employees and other workers." *Id.* ¶¶ 18–19, 22.

Kenna's wife, Mary Kenna, brings a claim against defendant for loss of her husband's services, society and consortium.

## II. DISCUSSION

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Maggette v. Dalsheim,* 709 F.2d 800, 803 (2d Cir.1983). Moreover, on a motion to dismiss, the allegations in the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (per curiam). This Court considers defendant's motion with these principles in mind.

---

1. This Court earlier denied defendant's motion to dismiss the original complaint without prejudice to renewal following the filing of an amended complaint.

■ Pursuant to the FTCA, the United States has consented to be sued for certain tortious acts of its employees. *See* 28 U.S.C. §§ 1346(b), 2671 *et seq.* However, § 2680 of the FTCA sets forth exceptions to the FTCA's waiver of sovereign immunity. The exception at issue in this case is found in § 2680(h), which provides, in relevant part, that the FTCA does not apply to "[a]ny claim arising out of assault [or] battery." [2]

Plaintiffs argue that their claims do not fall within the § 2680(h) exception, as the "attack did not arise from an assault and battery." Amended Complaint ¶ 21. Rather, according to plaintiffs, their claims are based on defendant's alleged negligent "hiring," "supervision," "retention," and "employment" of Hasapidis. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pls.Mem."), at 1, 3. As noted above, plaintiffs cast defendant's negligence as "fail[ure] to warn those working with [Hasapidis] about his violent propensities," "failure to control and monitor the medications of [Hasapidis]," and "failure … to exercise due care and caution for the safety of its employees and other workers." Amended Complaint ¶¶ 18–19, 22. Plaintiffs further characterize defendant's negligence as, among other things, a failure to ascertain Hasapidis' violent propensities and the effects on Hasapidis of certain medications or the lack of certain medications. Pls.Mem. at 5. Despite these characterizations, plaintiffs' claims do not avoid the reach of § 2680(h).

The Supreme Court addressed § 2680(h) in *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). In *Shearer*, the plaintiff, a survivor of a serviceman who was murdered by a fellow serviceman, sued the United States claiming that the Army's negligence failed to prevent the murder. *Id.* at 53, 105 S.Ct. at 3040–41. More particularly, the plaintiff alleged that although the Army knew that the murderer was dangerous, it "negligently and carelessly failed to exert a reasonably sufficient control over' him and 'failed to warn other persons that he was at large.'" *Id.* at 54, 105 S.Ct.

at 3041. The Supreme Court dismissed the plaintiff's claim based upon the *Feres* doctrine, which bars a claim by a serviceman under the FTCA for injuries which "arise out of or are in the course of activity incident to service." *Id.* at 57, 105 S.Ct. at 3042. However, Chief Justice Burger, in a portion of an opinion joined by three other Justices, concluded that the plaintiff's claim was barred by the § 2680(h) exception for assault and battery:

> Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee.

*Id.* at 55, 105 S.Ct. at 3041. Four other Justices declined to join in this portion of the opinion, but did not dissent from it, and concurred in disposing of the case based on the *Feres* doctrine. The remaining Justice took no part in the decision of the case.

The Second Circuit expressly adopted the *Shearer* plurality's view in *Johnson v. United States*, 788 F.2d 845, 850 (2d Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986), holding that § 2680(h) bars a plaintiff from clothing assault or battery actions in terms of negligent hiring and negligent supervision. In *Johnson*, the plaintiffs sued the United States alleging negligent supervision of a letter carrier who had sexually assaulted the child plaintiff. The Second Circuit concluded that § 2680(h) barred plaintiffs' claims, as plaintiffs could not avoid the exception by alleging that the letter carrier was negligently hired, assigned and supervised "with notice or knowledge of [his] criminal and perverted propensities and tendencies." *Id.* at 854; *see also Miele v. United States*, 800 F.2d 50 (2d Cir.1986).

---

**2.** Section 2680(h) is referred to as the "intentional tort exception" as it excludes from the FTCA's waiver of sovereign immunity "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

In *Miele*, decided shortly after *Johnson*, a serviceman threw sulfuric acid into a child's face. The plaintiffs sued the United States alleging that the Army was negligent in failing to appreciate the danger posed by the serviceman's disturbed mental state, in failing to supervise him, and in failing to warn the plaintiffs of the serviceman's delusionary preoccupation with the child. Relying on *Shearer* and *Johnson*, the Second Circuit held that the claim was barred by § 2680(h). *See Miele*, 800 F.2d at 52.

Subsequently, in *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), the Supreme Court narrowed the scope of § 2680(h), holding that § 2680(h) is not applicable where a federal employee commits an assault or battery while acting *outside* the scope of his employment, and the assault or battery occurred as a result of the negligence of other federal employees based upon a duty *independent* of the employment relationship. *See id.* at 401–03, 108 S.Ct. at 2455–56. In *Sheridan*, an off-duty naval medical aide named Carr was found lying drunk in a naval hospital by three naval corpsmen. When the corpsmen tried to take Carr to the emergency room of the hospital, Carr resisted and the corpsmen noticed Carr possessed a rifle. At the sight of the rifle, the corpsmen fled and did not take any further action to subdue Carr, nor did they alert any authorities that he was intoxicated and brandishing a weapon. Later, Carr damaged the plaintiffs' car and physically injured one of the plaintiffs when he fired shots into the plaintiffs' car. The Court held that the plaintiffs' claim was not barred by § 2680(h) because Carr was acting *outside* the scope of his employment and the negligence of other federal employees, who allowed a foreseeable assault to occur, furnished a basis for liability independent of Carr's employment status. *See id.* The Court added:

> Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr [the assailant] was on a federal payroll.

.... Because neither Carr's employment status nor his state of mind has any bearing on the basis for petitioners' claim for money damages, the intentional tort exception to the FTCA is not applicable in this case.

*Id.* at 402–03, 108 S.Ct. at 2456.

Based on its determination, however, the *Sheridan* majority stated that it was unnecessary for the Court to decide whether negligent hiring, supervision and training may ever provide a basis for liability under the FTCA, as Carr's employment status was irrelevant to the Court's determination. *Id.* at 403 n. 8, 108 S.Ct. at 2456 n. 8. However, as Justice Kennedy explained in a concurring opinion:

> To determine whether a claim arises from an intentional assault or battery and is therefore barred by the exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tortfeasor or the breach of some separate duty independent of the employment relation. If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h) bars the claim. Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors. To allow such claims would frustrate the purposes of the exception.

*Id.* at 406–07, 108 S.Ct. at 2458 (Kennedy, J., concurring in the judgment).

In a Second Circuit case decided before *Sheridan*, the Second Circuit upheld the dismissal of an action by a plaintiff against the United States for the alleged negligent supervision of an undercover operative working in the Abscam investigation who defamed him. *See Guccione v. United States*, 847 F.2d 1031, 1037–38 (2d Cir.1988), *reh'g denied*, 878 F.2d 32 (2d Cir.1989), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990). Relying on *Johnson* and *Miele*, the *Guccione* court held that plaintiff Guccione's

claim was barred by § 2680(h). *Johnson* and *Miele,* the court stated, demonstrate that the "United States is not liable for the intentional torts of those carrying out its business, even though the plaintiff alleges a claim of primary negligence on the part of the United States in failing to supervise or otherwise avoid foreseeable risks." *Id.* at 1036. The *Guccione* court also rejected Guccione's argument that the negligence of which he complained was "independent" of the government's supervision of the its operative. Although, the court recognized that the so-called "independent affirmative duty" doctrine had "yet to be considered directly" by the court, the court found the doctrine as it has evolved in other circuits, *see id.* at 1037 (citing cases), was not applicable in any event because the case was "not one in which a plaintiff has been place in the care or custody of the Government and thereafter suffers harm as a result of the negligent performance of a duty of protective care that the plaintiff was entitled to rely upon." *Id.*

After the Supreme Court's decision in *Sheridan,* Guccione petitioned for rehearing. In denying the petition for rehearing, the Second Circuit held that, notwithstanding *Sheridan,* § 2680(h) barred Guccione's claim. The court explained:

> *Sheridan* does not aid Guccione. Guccione's claim is based on the negligence of the United States in failing to supervise Melvin Weinberg, in his role as an undercover operative in the Abscam investigation. Manifestly, Weinberg's role in relation to the United States is at the heart of Guccione's claim. Though the naval corpsman in *Sheridan* may have had a duty to take reasonable steps to prevent any drunken person from leaving their hospital with a weapon, the only duty possibly owed to Guccione by the Government agents with responsibilities for the Abscam investigation was to exercise reasonable care in the supervision of those persons acting in some way to carry out the governmental objective of that investigation. Weinberg, unlike the assailant in *Sheridan,* was carrying out the Government's business during the episode in which he allegedly injured the tort plaintiff, even though he may have exceeded the bounds of proper

conduct in the particular way he chose to carry out his assignment. Any negligent supervision on the part of those supervising the Abscam investigation is not "entirely independent" of the relationship between Weinberg and the United States, whether or not Weinberg's status was technically that of an "employee." In such circumstances, the negligent supervision claim encounters the obstacle of [§ 2680(h)].

*Guccione,* 878 F.2d at 32–33.

Upon review of the amended complaint, it is clear that plaintiff Kenna's claim of negligent hiring and supervision is grounded in the employment relationship between defendant and Hasapidis, not on some separate duty independent of the employment relationship. Plaintiffs do not allege that the assault occurred outside the course of Hasapidis' employment, and plaintiffs' counsel conceded at oral argument (and plaintiffs do not allege otherwise) that the assault occurred at Hasapidis' place of employment in the IRS facility during the course of his work day. *Sheridan* does not aid plaintiffs. Because the amended complaint does not allege a claim based on negligence "independent" of defendant's hiring and supervision of its employee, Hasapidis, *see Sheridan,* 487 U.S. at 401, 108 S.Ct. at 2455; *Guccione,* 878 F.2d at 32–33, Kenna's claim is within the § 2680(h) exception, *see Guccione,* 847 F.2d at 1036–37; *Johnson,* 788 F.2d at 850, 854.

Plaintiffs argue that this case fits within the framework of a Third Circuit case, *Gibson v. United States,* 457 F.2d 1391 (3d Cir. 1972), one of the cases cited by the Second Circuit in *Guccione,* 847 F.2d at 1037–38, where an independent affirmative duty was held to have arisen. In *Gibson,* the plaintiff was assaulted by a juvenile delinquent Job Corps enrollee, employed and housed by the United States. The enrollee was a known drug addict, accepted in a Job Corps program designed to instruct, rehabilitate and care for enrollees who were known to be violent juvenile offenders and drug addicts. The plaintiff was a Job Corps leader and instructor, who was required to live and work with the enrollees of the program. The *Gib-*

*son* court held that, having established the program, the United States was under an affirmative duty to prevent harm to those who, like the plaintiff, came to train and instruct the enrollees, and that the § 2680(h) exception did not apply to such claim. *Id.* at 1394–96.

Even assuming that *Gibson* would be followed in this circuit, *Gibson* is distinguishable from this case. Although defendant's counsel conceded at oral argument that Hasapidis was hired by the IRS as part of a program to hire mentally restored persons (as certified by the state), plaintiffs do not allege (nor is there any indication that they can allege) that the IRS hired Hasapidis under a special program in which defendant was to undertake instruction, rehabilitation or care, including monitoring and supervising Hasapidis' medications or drug use. More importantly, the amended complaint makes clear that Kenna was not employed by the government to instruct, rehabilitate or care for Hasapidis. Neither the assailant (Hasapidis) nor the victim (Kenna) were placed in the care or custody of the United States.

Consequently, Kenna's claim is within the § 2680(h) exception. Because defendant did not waive its sovereign immunity as to Kenna's claim, this Court dismisses Kenna's claim for lack of subject matter jurisdiction. Because Mary Kenna's claim is derived from Kenna's claim, her claim must also be dismissed.

### III. *CONCLUSION*

For the reasons above, defendant's motion is granted and the amended complaint is dismissed. The Clerk of the Court is directed to enter judgment dismissing the amended complaint and to close the file in this matter.

SO ORDERED.